L. V. Thibodeau, as Trustee in Bankruptcy of

Theodore Langlais

*vs.*

Theodore Langlais, Julie Langlais, Flavie Langlais, and

Flavie Langlais as Legatee under the Will of

Joseph Langlais.

Aroostook.     Opinion, April 8, 1932.

*R. W. Shaw*, for plaintiff.
*John B. Pelletier*,
*Harry C. McManus*, for defendants.

Sitting: Pattangall, C. J., Dunn, Sturgis, Farrington, Thaxter, JJ.

FARRINGTON, J.   The case is before this Court on appeal from the decree of the sitting Justice on a bill in equity dated August 16, 1930, brought by L. V. Thibodeau, Trustee in Bankruptcy, of Theodore Langlais against the said Theodore, his wife, Julie, and his mother, Flavie Langlais, individually and as legatee under the will of Joseph Langlais, deceased father of the bankrupt.

From allegations in the bill admitted in the answer the following narrative of events may be assumed as true. On October 27, 1915, Flavie Langlais and Joseph Langlais, husband and wife, conveyed by warranty deed to their son, Theodore Langlais, certain land and buildings in Hamlin Plantation, described as part of Lot No. 321 in Township G, First Range of Townships, W. E. L. S., Aroostook County, including a separately described triangular parcel, and constituting the homestead farm.

On the same day, Theodore, his wife Julie joining in the deed, mortgaged the same premises to Joseph and Flavie (the consideration being named as $1,500) to secure their support and maintenance as long as they or either of them lived, together with certain other correlated obligations. The deed, and the mortgage containing a one year redemption clause, were recorded October 28, 1915.

Joseph Langlais and Flavie Langlais, claiming a breach of its conditions, began foreclosure of this mortgage by notice dated January 23, 1924, duly published, and seasonably recorded. No question is raised as to the technical validity of the foreclosure by virtue of which the record title again vested in Joseph and Flavie on January 30, 1925.

On May 28, 1928, Joseph and Flavie by warranty deed conveyed the same premises to Julie, wife of Theodore Langlais, who was the grantee in the original conveyance of October 27, 1915. It may be noted that this deed did not cover the triangular piece mentioned in the deed to Theodore.

On the same day, Julie, her husband joining in the deed, mortgaged the same premises to the same Joseph and Flavie to secure their support and maintenance on the premises as long as they lived.

The record does not disclose the date of death of Joseph but it is clear that it occurred some months before Theodore was adjudicated bankrupt on November 27, 1929.

Under the seventh paragraph of the bill it was alleged that there was not any breach of the conditions of the mortgage of October 27, 1915, and that Theodore and his wife conspired with Joseph and Flavie "to change the title of the said real estate named in said mortgage from the said Theodore Langlais to his wife Julie Langlais in contemplation of bankruptcy and with a corrupt plan and purpose to place his said Theodore Langlais's interest in said real estate beyond the reach of his creditors, which purpose he tried to carry out by the foreclosure proceedings named and set forth in paragraph six of this bill, and did thereby unlawfully, fraudulently and corruptly put his property beyond the reach of creditors."

On this phase of the case the sitting Justice, without any direct findings of fact, decreed that the foreclosure proceedings were null and void and that title to the land covered by the foreclosure was in Theodore Langlais on November 27, 1929, the date of adjudication of bankruptcy, and that the same passed to his Trustee in Bankruptcy. As to this real estate the decree did not order any conveyance or releases by the respondents to the Trustee.

Fraud is never to be presumed. It must always be proved. *Grant v. Ward*, 64 Me., 239; *Frost et als v. Walls et al*, 93 Me., 405, 412.

"While fraud when proved vitiates any contract or settlement, it is not to be lightly assumed to exist but must be proved by trustworthy evidence consistent with undisputed circumstances." *Valley v. B. & M. Railroad Co.*, 103 Me., 106, 112.

To sustain an allegation of fraud there must be more than surmise or conjecture which can not of themselves stand as substitutes for proof. *Averill, Admr.* v. *Cone*, 129 Me., 9; *Adams et als* v. *Ketchum et als*, 129 Me., 212; *Titcomb* v. *Powers, Executrix*, 108 Me., 347; *McTaggart, Admx.* v. *Maine Central Railroad Company*, 100 Me., 223.

While the relationship of the parties and the circumstances and surroundings involved in the case at bar were such as, taken together, might have tended to arouse suspicion, we do not regard the

situation disclosed by the record as one which took it beyond the rule as to suspicion, surmise and conjecture.

"The burden of proof, to establish the alleged fraud, is upon the defendant (*the one claiming fraud*) and it is not sufficient to raise suspicions." *Bartlett* v. *Blake*, 37 Me., 124, 127.

In *Strout* v. *Lewis, Admx.*, 104 Me., 65, which involved a question of fraud, the Court said: "The charge is a serious one and the law imposes upon the defendant (*the one claiming fraud*) the burden of substantiating it by clear and convincing proof."

The record of the case was brief, and, after careful reading and rereading of the same, we find no evidence which, in our opinion, warranted a finding, which of necessity was the basis of the above decree, that there was fraud and conspiracy. The burden of substantiating their existence under the rule above given has not been sustained, nor do we regard the record as justifying an inference of their existence.

We find that, by virtue of the foreclosure, title to the property in question vested in Joseph Langlais and Flavie Langlais on January 30, 1925, and that the title, never having been again acquired by the bankrupt, was not in his Trustee on November 27, 1929, but that, with the exception of the triangular piece, it was on that date in Julie Langlais, subject to the support mortgage hereinbefore noted. The title of the triangular parcel, having been excepted in the deed to Julie Langlais, can be easily traced, and it never again came back to Theodore.

Having considered the situation with reference to the property covered by the aforesaid deed to Theodore, the record shows that on December 11, 1918, he purchased from one Pea R. Cyr a fifty-three acre parcel of land in said Hamlin Plantation, Township G, Range 1, W. E. L. S., being part of Lot No. 3.

On September 19, 1923, he mortgaged this parcel to Remi P. Cyr and Levitte Ayotte for $8,000, together with the homestead farm. The support mortgage to the father and mother was not mentioned in this mortgage to Cyr and Ayotte, which was conditioned on Theodore saving them harmless on account of a bond signed by them on criminal recognizances to release Theodore from arrest and also to release certain personal property from attachment.

On January 24, 1925, this mortgage was assigned to The First National Bank of Van Buren "for a valuable consideration," and by it assigned on January 7, 1926, to Joseph Langlais. As to this mortgage, it is alleged in the bill and admitted in the answer that Joseph Langlais "never put any money into said mortgage." There being no discharge of record, the sitting Justice decreed that "For the purpose of carrying out the final provisions of this decree, the mortgage given by said Theodore Langlais and his wife, as recorded in Vol. 108 Page 214, set forth in paragraph four of the plaintiff's bill, be and hereby is declared to be paid in full and the personal representatives of the said Joseph Langlais, deceased, are hereby ordered to discharge the same of record." As far as counsel were concerned, there appeared to be no question as to this part of the decree, but it would be well to remove a slight but apparent confusion as to volume and page of record.

On November 5, 1923, Theodore and Julie mortgaged to The First National Bank of Van Buren for $950, covering the same fifty-three acre parcel above mentioned and also the homestead farm, reference being made to the incumbrance in favor of Joseph Langlais, and to one other not important in this case. The bill in paragraph seventeen alleged that this mortgage had been paid by Theodore Langlais and that it should be discharged of record, and this was admitted in the answer, which also states that "said mortgage and assignment have been lost and can not be found although a diligent search has been made." The record does not show any assignment to anyone. If there had been in fact such assignment to Joseph, that part of the decree which ordered his personal representatives to discharge it, was proper and should be enforced. If in fact there was no assignment, the Bank still owned the mortgage, and, not being made a party to the bill, no decree, if made, could be effective against it. The answer at least made it clear that no rights under that mortgage were claimed by the respondents.

On January 24, 1925, Theodore, his wife joining, gave another mortgage to Remi P. Cyr and Levitte Ayotte. This time the mortgage was for $1,500 and covered the same fifty-three acre parcel and the same land, including the triangular piece, covered by the mortgage of October 27, 1915, which was foreclosed, and title to

which revested in Joseph Langlais, January 30, 1925, six days later than the date of the above mortgage, which was conditioned on the payment by Theodore and his wife of two notes held by The First National Bank of Van Buren and endorsed by the mortgagees, one for $1,000 and one for $425, and so save them harmless as to costs.

On the same day, the mortgage was assigned to the bank where the notes were held and was assigned by the bank to Joseph Langlais January 7, 1926.

As to this mortgage, the bill alleged that it had been paid "by the property and funds of the said Theodore Langlais and that said Joseph Langlais never paid the same nor any part thereof." The paragraph containing this allegation, which is quoted only in part, was denied in the answer of the respondents and was one of the issues in the case.

Referring to this mortgage, the decree was that it was "found to be paid out of the funds and property of the said Theodore Langlais and that the same be discharged of record by the personal representatives of Joseph Langlais, deceased, especially as far as it relates to the property described in paragraph three of the decree, said mortgage being recorded in Vol. 104, Page 226." Paragraph three related to the fifty-three acre parcel which was acquired by Theodore, December 11, 1918, as above noted and which was not covered by the foreclosure. On the issue raised as to this mortgage, we are unable to find any evidence supporting the claim that when it was assigned to Joseph Langlais the money was paid from funds of the bankrupt. A careful reading of the record forces us to the conclusion that, while it may have afforded ground for surmise and suspicion, it did not warrant the finding and decree as noted above. Admissions in the answer of respondents made it unnecessary to consider the record as to who paid the mortgages of September 23, 1923, and November 5, 1923. Had it not been for these admissions we might have been forced, on the record before us, to the same conclusion which we have reached as to the mortgage now under consideration.

The third paragraph of the decree, without any finding of fact, declared the deed from Joseph Langlais and Flavie Langlais to

Julie, wife of Theodore, to be "null and void" as far as it related to the fifty-three acre piece to which reference has already been made. An examination of the copy of this deed which is a part of the record before this Court reveals the fact that this parcel was not included or mentioned in it. It conveyed only the real estate foreclosed as hereinbefore indicated, with the specific exception of the triangular parcel. This part of the decree was, therefore, of no effect as there was nothing upon which it could operate. Furthermore, we find no evidence in the case which satisfies us that there was any fraud or conspiracy on the part of Theodore, Joseph, Flavie or Julie Langlais in connection with the deed and mortgage of May 28, 1928. It is true that this part of the decree covered only the fifty-three acre parcel, and made no reference to any part of the original homestead farm but we feel that the evidence, in any event, would not warrant a decree that the deed was null and void in respect to any land conveyed by it.

The sixth and last paragraph of the decree was that the title to the fifty-three acre parcel was in the Trustee and that Theodore, Julie, his wife, Flavie Langlais, the mother, and as legatee under the will of Joseph, should "make, execute and deliver to said Trustee in Bankruptcy all necessary deeds, discharges and releases to ratify and confirm the title of the said Trustee in Bankruptcy in and to said property, so that the said Trustee in Bankruptcy can convey the same to any purchaser free from any liens or claims of the said defendants or either of them."

The title to the fifty-three acre parcel was unquestionably in the Trustee in Bankruptcy on November 27, 1929, but he took it subject to the mortgage of January 24, 1925, held, as far as the record shows, at the time of his death by Joseph Langlais under the assignment above noted. When and if the Trustee in Bankruptcy shall have paid the mortgage, the personal representative of Joseph Langlais would be under the duty of executing a proper discharge.

The entry must be,

*Appeal sustained.*
*Decree in accordance*
*with this opinion.*